# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JAMES D. GOODMAN, | ) | No. 73665-5-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | ) | |
| Defendant, | ) | |
| and | ) | |
| AIRBORNE EXPRESS, INC., | ) | |
| Appellant. | ) | FILED: January 11, 2016 |

TRICKEY, J. — Airborne Express, Inc. appeals from a superior court order reversing the decision of the Board of Industrial Insurance Appeals. The superior court concluded that James D. Goodman, Airborne's former employee, has been permanently and totally disabled since February 10, 2011. Because the superior court failed to apply the proper standard of review to the Board's finding of fact on a material issue, we reverse and remand.

## FACTS

In March 2002, Goodman was involved in an automobile accident while working as a delivery driver for Airborne Express. Goodman's vehicle was broadsided at an intersection, and he was thrown onto the floor. He sustained injuries to his neck, shoulder, and arms. He sought treatment from several doctors and eventually had surgery for his injuries.

Following the accident, Goodman brought a claim for workers' compensation benefits. On December 3, 2010, the Department of Labor and Industries (Department) determined that Goodman's medical conditions related to the injury were stable. It directed Airborne to pay Goodman a permanent partial disability award of 14 percent of the amputation value of the right arm at or above the deltoid insertion or by disarticulation at the shoulder, and a permanent partial disability award of Category 2 of permanent cervical and cervico-dorsal impairments. It closed Goodman's claim. On February 10, 2011, the Department affirmed its order.

Goodman appealed the Department's February 10 order to the Board of Industrial Insurance Appeals. In his notice of appeal, he asked for the "[c]laim to remain open, treatment, time loss, increased [permanent partial disability,] PPD, or in the alternative permanent pension."[1] The Board granted the appeal. The case proceeded to an Industrial Appeals Judge (IAJ), where the parties presented lay, vocational, and medical expert testimony.

On January 17, 2013, the IAJ issued a proposed decision and order. The IAJ determined that as of January 7, 2009 through February 10, 2011, Goodman was not able to perform and obtain gainful employment and was a "temporarily totally disabled worker."[2] The IAJ also determined that Goodman's conditions were not fixed and stable as of February 10, 2011. In making this latter determination, the IAJ found, in finding of fact 3, that the industrial injury was the proximate cause of left-sided carpal tunnel syndrome. Because surgery for the

_____

[1] Clerk's Papers (CP) at 866.
[2] CP at 22.

2

carpal tunnel syndrome was not performed until May 2011, the IAJ reasoned that it was "premature to rate the extent of Mr. Goodman's permanent disability, either partial or total."[3]  It concluded that the matter should be remanded to the Department to provide further proper and necessary treatment.

Goodman petitioned the Board for review of the proposed order. He argued that the IAJ erred in not finding him permanently totally disabled.  Goodman did not challenge the IAJ's finding that the left-sided carpal tunnel syndrome was related to his industrial injury.  In response, Airborne requested that the Board affirm the proposed order.  It argued that Goodman's left-sided carpal tunnel syndrome was not fixed and stable as of February 10, 2011. Airborne also argued that if the Board found Goodman fixed and stable as to all conditions, then Goodman was employable on a reasonably continuous full-time basis.

On April 17, 2013, the Board issued its decision and order.  The Board acknowledged that Goodman did not dispute the IAJ's determination to allow his left-sided carpal tunnel syndrome condition under the claim.  Observing that industrial insurance claims should be kept open until all industrially related conditions have become fixed and stable, the Board agreed that it could not determine whether Goodman had become permanently totally disabled as of February 2011.  It concluded that Goodman was a temporarily totally disabled worker from January 7, 2009 through February 10, 2011.  And it concluded that as of February 10, 2011, Goodman's conditions were not fixed and stable.  It reversed the Department's order and remanded the matter to the Department with direction

---

[3] CP at 19.

3

to find Goodman not entitled to time-loss compensation benefits from August 22, 2008 through January 6, 2009, to direct Airborne to pay time-loss compensation benefits from January 7, 2009 through February 10, 2011, and to provide Goodman with further proper and necessary medical treatment.

Goodman appealed to the Pierce County Superior Court. Prior to trial, Goodman moved to clarify the issues. He argued that because Airborne did not appeal the Board's order, the issue should be limited to temporary total disability or permanent total disability. In response, Airborne argued that the scope of review was not limited to the issues presented by Goodman, but instead, that all of the issues raised in Goodman's notice of appeal to the Board and tried expressly or impliedly by the parties were before the court. The court agreed with Goodman that the issues were limited to temporary total disability or permanent total disability based on Airborne's failure to appeal the Board's order. It entered an order to that effect.

Following a bench trial, the superior court reversed the Board's order. The court found, in finding of fact 1.5, that the industrial injury was not the proximate cause of the left-sided carpal tunnel syndrome. It concluded that Goodman has been permanently totally disabled since February 10, 2011. It remanded the claim to the Department with directions to place Goodman on the pension rolls.

Airborne appeals.

## ANALYSIS

"In an industrial insurance case, we review the decision of the trial court, not the decision of the Board." Dillon v. Dep't of Labor & Indus., 186 Wn. App. 1, 6,

4

344 P.3d 1216 (2014), review denied, 183 Wn.2d 1021, 355 P.3d 1152 (2015); RCW 51.52.140. Our review is akin to our review of other superior court judgments. Dillon, 186 Wn. App. at 6. "'[W]e review whether substantial evidence supports the trial court's factual findings and then review, de novo, whether the trial court's conclusions of law flow from the findings.'" Rogers v. Dep't of Labor & Indus., 151 Wn. App. 174, 180, 210 P.3d 355 (2009) (quoting Watson v. Dep't of Labor & Indus., 133 Wn. App. 903, 909, 138 P.3d 177 (2006)).

## Carpal Tunnel Syndrome

Airborne challenges the superior court's finding of fact 1.5, that the industrial injury is not the proximate cause of left-sided carpal tunnel syndrome. Airborne argues that the superior court exceeded the scope of its review when it made this finding. Airborne also argues that the superior court applied the improper standard of review. We address these arguments in turn.

*Scope of Review*

Airborne first argues that the superior court exceeded its scope of review when it found that Goodman's left-sided carpal tunnel syndrome is not causally related to the industrial injury. We disagree.

RCW 51.52.115 governs the superior court's review of decisions by the Board. In relevant part it states:

> Upon appeals to the superior court, only such issues of law or fact may be raised as were properly included in the notice of appeal to the board, or in the complete record of the proceedings before the board. The hearing in the superior court shall be de novo, but the court shall not receive evidence or testimony other than, or in addition to, that offered before the board or included in the record filed by the board in the superior court.

Accordingly, "a superior court's authority to determine an issue . . . 'depends upon whether or not the Board properly addressed that issue.'" Matthews v. Dep't of Labor & Indus., 171 Wn. App. 477, 491, 288 P.3d 630 (2012) (quoting Hanquet v. Dep't of Labor & Indus., 75 Wn. App. 657, 663-64, 879 P.2d 326 (1994)). "[A]lthough the superior court is limited to considering only the record before the Board, the superior court has no limitation upon the intensity of its review." Hanquet, 75 Wn. App. at 665-66.

Here, the parties do not dispute that Goodman's notice of appeal to the Board was broad. He asked for the "[c]laim to remain open, treatment, time loss, increased PPD, or in the alternative permanent pension."[4] The issue of carpal tunnel syndrome causation falls within the subjects raised in the notice of appeal. Thus, based on the plain language of RCW 51.52.115, the superior court had the authority to review this issue.

Airborne contends that Goodman's subsequent petition for review to the Board further narrowed the superior court's scope of review. In his petition for review, Goodman did not challenge the finding that the industrial injury was the proximate cause of the carpal tunnel syndrome.

To support this argument, Airborne relies on RCW 51.52.104. That statute provides that any party may file with the Board a written petition for review of the proposed decision and order of the IAJ. RCW 51.52.104 further states, "Such petition for review shall set forth in detail the grounds therefor and the party or parties filing the same shall be deemed to have waived all objections or

---

[4] CP at 866.

6

irregularities not specifically set forth therein."

RCW 51.52.104 did not prohibit the superior court from considering the issue of carpal tunnel syndrome causation. As stated earlier, this issue was properly before the superior court based on the plain language of RCW 51.52.115. Goodman's petition for review was not relevant for purposes of RCW 51.52.115.

Airborne cites several cases holding that, under RCW 51.52.104, a party waives legal arguments not presented to the Board in the petition for review. None of them hold that the superior court's scope of review is limited to issues presented in the petition for review. See Leuluaialii v. Dep't of Labor & Indus., 169 Wn. App. 672, 684, 279 P.3d 515 (2012), Merlino Const. v. City of Seattle, 167 Wn. App. 609, 616 n.3, 273 P.3d 1049 (2012), Allen v. Dep't of Labor & Indus., 66 Wn. App. 415, 422, 832 P.2d 489 (1992), Hill v. Dep't of Labor & Indus., 90 Wn.2d 276, 280, 580 P.2d 636 (1978). Thus, Airborne's reliance on those cases is misplaced.

Finally, we note that the Department of Labor and Industries submitted an appellate brief addressing this issue. The Department advances the same arguments as Airborne. Because we have already addressed these arguments, we need not consider the Department's brief.

*Standard of Review*

Airborne next argues that the superior court failed to apply the proper standard of review when it found that Goodman's left-sided carpal tunnel syndrome is not causally related to the industrial injury. We agree.

The Board's decision is prima facie correct under RCW 51.52.115. The superior court may substitute its own findings and decision for the Board's only if

7

it finds from a fair preponderance of credible evidence that the Board's findings and decision are incorrect. Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 5, 977 P.2d 570 (1999). If the court finds the evidence to be evenly balanced, then the Board's findings must stand. Jepsen v. Dep't of Labor & Indus., 89 Wn.2d 394, 401, 573 P.2d 10 (1977).

Here, in finding of fact 1.5, the court found that "[t]he industrial injury . . . is not the proximate cause of . . . left-sided carpal tunnel syndrome."[5] This contradicted the Board's finding of fact 3, that the industrial injury *was* the proximate cause of the left-sided carpal tunnel syndrome.

Neither the court's written findings of fact nor the court's oral ruling indicate that it found by a preponderance of credible evidence that the Board's finding on carpal tunnel syndrome causation was incorrect. On the contrary, the court's oral statements indicate that it found the evidence to be evenly balanced. It stated, "Well, when I reviewed this, I mean, I basically set aside the carpal tunnel, which *may or may not be related to the original injury*."[6] The court's failure to apply the proper standard of review was error.

Goodman argues that the court did not decide that his carpal tunnel syndrome was unrelated to the industrial injury. He asserts that the court's oral ruling makes it clear that it instead decided that Goodman is permanently disabled regardless of whether the carpal tunnel syndrome is related.[7] But the court entered a written finding explicitly stating that the industrial injury is not the proximate cause

---

[5] CP at 1030.
[6] Report of Proceedings (June 6, 2014) at 15 (emphasis added).
[7] Br. of Resp't (James D. Goodman) at 7.

of left-sided carpal tunnel syndrome. To the extent that the court's oral ruling is inconsistent with the written findings, the written findings control. State v. Bryant, 78 Wn. App. 805, 812-13, 901 P.2d 1046 (1995).

In any event, Goodman's contention that the court's oral ruling explains that it viewed the carpal tunnel syndrome as immaterial to its permanent disability determination is essentially an argument that the error was harmless. To the extent that a harmlessness analysis is appropriate, we conclude that this error is not harmless.

Whether Goodman's carpal tunnel syndrome is related to his industrial injury, and whether his carpal tunnel syndrome is fixed and stable, are issues material to the determination of whether the claim can be closed. "For total disability to be permanent, it is necessary that 'the physical condition arising from the injury [be] fixed, lasting, and stable.'" Wilson v. Dep't of Labor & Indus., 6 Wn. App. 902, 904, 496 P.2d 551 (1972) (alteration in original) (quoting Hiatt v. Dep't of Labor & Indus., 48 Wn.2d 843, 846, 297 P.2d 244 (1956)). Contrary to Goodman's assertion otherwise, *all* of the worker's conditions arising from the injury must be fixed and stable for total disability to be permanent.

Pend Oreille Mines & Metals Co. v. Department of Labor & Industries is instructive. 64 Wn.2d 270, 391 P.2d 210 (1964). In that case, the employee's condition had deteriorated to the point where he was completely and permanently unemployable with no possibility of recovery. The employer sought to close the claim and classify the employee as permanently totally disabled. The employer argued that "once the workman's condition has passed the point where he will

never be employable again, his condition is properly defined as 'permanent total disability' and not 'temporary total disability.'" Pend Oreille, 64 Wn.2d at 271. The Supreme Court rejected this argument as inconsistent with the Industrial Insurance Act, Title 51 RCW:

> It is clear that if a permanently disabled workman is given a lump sum settlement or is placed on the pension roll, the moment he comes under this definition of permanent total disability, he conceivably could be denied medical care and attention when he is in the greatest need since the right to medical aid under the act would terminate at that time. Such a construction would make the act an absurdity by emasculating one of its primary objectives of providing sure and certain relief for workmen, injured in extrahazardous work. . . . Considering the act in its entirety, it is implicit that a workman who sustained an industrial injury is entitled to receive medical care and attention as may reasonably be required. The act should therefore be construed, in the light of its declared purpose and intent, by providing that a workman may not be rated for permanent total disability until his condition becomes static or fixed, thereby affording him beneficial care and treatment from the time of his injury.

Pend Oreille, 64 Wn.2d at 272.

Under Pend Oreille, a claim must remain open until all of the worker's conditions arising from the injury are fixed and stable. This accords with decisions of the Board of Industrial Insurance Appeals.[8] The Board has held that a claim is either open or closed but cannot be open with respect to some conditions and closed with respect to others. In re Pike, No. 88 3366 (Wash. Bd. of Indus. Ins. Appeals Apr. 18, 1990).

Goodman argues that Pend Oreille is not applicable, because he, the employee, is the one seeking the rating of permanent disability. He asserts that

---

[8] The Board publishes its significant decisions and makes them available to the public. RCW 51.52.160. These decisions are nonbinding but are persuasive authority for this court. O'Keefe v. Dep't of Labor & Indus., 126 Wn. App. 760, 766, 109 P.3d 484 (2005).

"[b]ecause the choice is his, the [IAJ's] objective of sure and certain relief is met by allowing the claim to move forward despite continued treatment rather than forcing his claim to remain open."[9] But Goodman cites no authority that the employee is entitled to make this choice. Accordingly, we reject this argument.

Goodman contends that Airborne is precluded from arguing that Goodman's condition is not fixed and stable because it did not appeal the Department's order. But the carpal tunnel syndrome condition was not a factor in the Department's closing order. Further, Goodman put this at issue by arguing on appeal that his conditions were fixed and stable and his claim should be closed. For these reasons, Goodman's argument is not convincing.

In sum, the superior court erred when it applied the incorrect standard of review to the Board's decision. This error was not harmless. We conclude that the proper remedy is to remand to the superior court. There, after applying the correct standard of review, the superior court can properly determine whether the Board's finding of fact on carpal tunnel syndrome causation should stand. Thereafter, the court can properly determine whether all of Goodman's conditions that are related to the industrial injury were fixed and stable in February 2011 and whether Goodman's claim should be closed.

## Employability

Finally, Airborne argues that the superior court erred as a matter of law when it limited the issues to whether Goodman was temporally totally disabled or permanently totally disabled. It contends that the superior court should have

---

[9] Br. of Resp't (James D. Goodman) at 24.

11

considered Goodman's employability. We reach this issue because it is likely to arise again on remand. We disagree with Airborne.

An aggrieved party has the right to appeal a decision of the Board, but if an aggrieved party fails to file its appeal to the superior court within 30 days, the decision of the Board becomes final. RCW 51.52.110; see also Hanquet, 75 Wn. App. at 665.

Airborne was an aggrieved party on the issue of Goodman's employability. Airborne argued to the Board that "the preponderance of the evidence shows [Goodman] is employable."[10] It also argued that Goodman was not temporarily totally disabled from January 7, 2009 to February 10, 2011, and that at the time of the claim closure, Goodman was employable on a reasonably continuous basis.

The Board found that "Goodman was not able to perform and obtain gainful employment on a reasonably continuous basis from January 7, 2009 through February 10, 2011."[11] And it determined that Goodman was temporarily totally disabled from January 7, 2009 through February 10, 2011.

Airborne argues that it was not aggrieved because the Board only made findings of temporary disability. But "'[t]emporary total disability' is a condition that temporarily incapacitates a worker from performing any work at any gainful employment." Hubbard v. Dep't of Labor & Indus., 140 Wn.2d 35, 43, 992 P.2d 1001 (2000). Temporary total disability differs from permanent total disability "only in duration of disability, and not in its character." Hubbard, 140 Wn.2d at 42.

Airborne was aggrieved by the Board's determination on Goodman's

---

[10] CP at 52.
[11] CP at 46.

12

employability notwithstanding the fact that the Board did not make a permanent disability determination. Because Airborne did not appeal, it waived its right to challenge that portion of the decision.

### Attorney Fees

Goodman argues that he is entitled to attorney fees and costs under RCW 51.52.130(1). We disagree.

RCW 51.52.130(1) provides that in cases "where a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court." Goodman is not the prevailing party in this appeal. We deny his request.

We reverse and remand.

Trickey, J.

WE CONCUR:

Cox, J.